UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
MARSHA STICKLER,

                Plaintiff,                    C.A. No. 10-CV-4138 (JBW)(LB)

            -against-                  DEMAND FOR JURY TRIAL

HANOCH HALEVY and ERIS HALEVY,
                                       **AMENDED COMPLAINT**

                Defendants.
-----------------------------------------------------X

Plaintiff, MARSHA STICKLER, by and through her attorneys, for her Complaint against the Defendants, HANOCH HALEVY and ERIS HALEVY, alleges the following:

### PARTIES

1. Plaintiff, Marsha Stickler, is a resident of the State of New Jersey and resides at 5 Shadow Drive, Town of West Windsor, State of New Jersey.

2. Upon information and belief, Defendants Hanoch Halevy and Eris Halevy are residents of the State of New York and reside at 966 East 29th Street, County of Kings, State of New York.

### JURISDICTION AND VENUE

3. This Court has original jurisdiction pursuant to 28 U.S.C. §1332 because the matter in controversy exceeds $75,000 and there is complete diversity of citizenship.

1

4. Venue is proper pursuant to 28 U.S.C. §1391 because this action concerns property located in the County of Kings and the Defendants reside in the County of Kings.

## BACKGROUND

5. On or about May 3, 1962, Murray and Eleanor Lax ("Plaintiff's Parents") purchased an undeveloped tract of land at 962 and 964 East 29th Street, County of Kings, City and State of New York ("Plaintiff's Property").

6. On or about October 1962, construction of a house on Plaintiff's Property was completed.  The house was and is positioned parallel to the Defendants' house.

7. At all relevant times from approximately October 1962 until their deaths, Plaintiff's Parents maintained a property interest in, resided in, and maintained Plaintiff's Property.

8. On or about March 22, 2004, Eleanor Lax, Plaintiff's surviving parent, executed a deed transferring Plaintiff's Property to Plaintiff while retaining a life estate in Plaintiff's Property.  Eleanor Lax passed away on April 21, 2006.

9. At all relevant times, the neighboring property located at 966 East 29th Street, County of Kings, City and State of New York ("Defendants' Property") has shared a boundary with Plaintiff's Property along the southern side of Plaintiff's Property, such that the two properties are adjacent to one another on East 29th Street.

10. At all relevant times, the boundary between the backyards of Plaintiff's Property and Defendants' Property has included a retaining wall that extends along the

southwestern side of Plaintiff's Property and towards the northwestern back corner of Defendants' house. The retaining wall prevents the advance of land from Defendants' backyard to Plaintiff's backyard because Defendants' Property is elevated approximately one and a half feet above Plaintiff's Property.

11. Upon information and belief on or around 1963, and prior to 1994, Plaintiff's Parents erected a fence atop the retaining wall and along the length of the retaining wall, such that the backyards of Plaintiff's Property and Defendants' Property are not accessible from one another. This fence continues to be maintained by the Plaintiff.

12. Upon information and belief on or around 1963, and prior to 1994, Plaintiff's Parents erected a five-foot tall chain-link fence extending diagonally from the fence atop the retaining wall to the northwest back corner of Defendants' house ("Diagonal Fence"), such that the Diagonal Fence completely cut off access from the Defendants' backyard to the area between the houses. The Diagonal Fence was maintained by Plaintiff's Parents, and subsequently by the Plaintiff, until its removal by Defendants in approximately Fall 2007.

13. A side yard ("Side Yard") extended approximately eight and a half feet in width from the southern side of Plaintiff's house to the northern side of Defendants' house, and extended lengthwise from the Diagonal Fence to the northeastern front corner of Defendants' house.

14. The Side Yard and the Plaintiff's Property are level and at the same elevation. The Defendants' backyard, house, and front yard are at a different level, elevated

approximately one and a half feet higher than the Side Yard and Plaintiff's Property.

15. The Diagonal Fence completely blocked access from Defendants' backyard to the Side Yard.

16. Upon information and belief on or around 1963, and prior to 1994, Plaintiff's Parents paved the Side Yard while maintaining for aesthetic purposes a grassy median between the northern and southern portions of the Side Yard.

17. At all relevant times, Plaintiff's Parents and Plaintiff maintained the Side Yard including its northern and southern paved portions.

18. Upon information and belief on or around 1963, and prior to 1994, Plaintiff's Parents planted a barrier at the northeastern front corner of Defendants' house that consisted of what is believed to have been at least one evergreen yew tree ("Evergreen Barrier").

19. The Evergreen Barrier had a width of approximately seven (7) feet and a height of approximately six (6) feet ("Evergreen Barrier").

20. The nature and composition of the Evergreen Barrier, formed by tree(s) that grow very dense and thick, was such that a person was unable to pass under or through the Evergreen Barrier.

21. At all relevant times, the Plaintiff's Parents and Plaintiff maintained the Evergreen Barrier.

22. The Evergreen Barrier completely blocked access to the Side Yard from Defendants' front yard, until its partial removal and destruction by Defendants in Fall 2007.

23. From 1963 (and latest by 1994) until Fall 2007, access to the Side Yard was only possible from Plaintiff's Property.

24. At all relevant times, there was no side entrance to the Defendants' house from the Side Yard.

25. From 1963 (and latest by 1994) until Fall 2007, the lawn area ("Maintained Lawn Area") extending from the Evergreen Barrier to the curb on East 29th Street was maintained by Plaintiff's Parents, and was subsequently maintained by Plaintiff.

26. Maintenance of the Maintained Lawn Area included, but was not limited to, mowing and placement of a chain garden fence around the Maintained Lawn Area.

27. Upon information and belief, prior to 1994 the Defendants' Property was owned in fee simple absolute by Estelle and Bernard Trachtenberg.

28. During their time owning Defendants' Property, Estelle and Bernard Trachtenberg made no changes to the Side Yard, the Diagonal Fence, or to the Evergreen Barrier.

29. Upon information and belief, on or about April 29, 1994, a deed was executed transferring Defendants' Property from the Estate of Estelle Trachtenberg, deceased, to Joseph Trachtenberg and Richard Trachtenberg.

30. During their time owning Defendants' Property, Joseph Trachtenberg and Richard Trachtenberg made no changes to the Side Yard, the Diagonal Fence, or to the Evergreen Barrier.

31. Upon information and belief, on or about May 8, 1996, a deed was executed transferring Defendants' Property from Joseph Trachtenberg and Richard Trachtenberg to Eva Muller.

32. During her time as owner of Defendants' Property, Eva Muller made no changes to the Side Yard, the Diagonal Fence, or to the Evergreen Barrier.

33. On or about April 26, 2006 ("Defendants' Purchase Date"), Defendants purchased Defendants' Property from Eva Muller in fee simple absolute.

34. On the Defendants' Purchase Date, the Side Yard, as well as the Diagonal Fence and Evergreen Barrier bounding the Side Yard, were still in existence and were fully visible and readily apparent to Defendants.

35. The Defendants were aware that the entire Side Yard and the Maintained Lawn Area were possessed by and maintained by the Plaintiff.

36. Subsequent to Defendants' Purchase Date, the Defendants requested to purchase the Side Yard and the Maintained Lawn Area from Plaintiff.

37. Defendants' offer to purchase the Side Yard and the Maintained Lawn Area was rejected by Plaintiff.

38. On or about Fall 2007, Defendants removed the Diagonal Fence, destroyed a substantial portion of the Evergreen Barrier, and removed the southern paved portion of the Side Yard.

39. On or about Fall 2007, Defendants erected a fence bisecting and dividing the Side Yard, thereby preventing Plaintiff's access to the southern portion of the Side Yard ("Southern Side Yard").

40. On or about Fall 2007, Defendants poured cement over the entire area within the Southern Side Yard, and constructed steps from Defendants' backyard to and extending onto the Southern Side Yard.

41. Since the time of this action's commencement, Defendants have poured cement over a substantial portion of the Maintained Lawn Area.

### AS AND FOR A FIRST CAUSE OF ACTION (ADVERSE POSSESSION)

42. Plaintiff repeats, restates and realleges each and every allegation contained in Paragraphs "1" through "41" inclusive of this Amended Complaint, as if each were fully stated herein.

43. Plaintiff and her predecessors in title, namely Plaintiff's Parents, continuously possessed the Southern Side Yard and the Maintained Lawn Area for a period of time not fewer than ten (10) consecutive years.

44. Plaintiff and her predecessors in title, namely Plaintiff's Parents, continuously possessed the Southern Side Yard and the Maintained Lawn Area from on or about 1962 to Fall 2007.

45. Plaintiff and Plaintiff's Parents conducted themselves in a manner consistent with ownership of the Southern Side Yard and the Maintained Lawn Area.

46. Plaintiff and Plaintiff's Parents' possession and occupation of the Southern Side Yard and the Maintained Lawn area were exclusive.

47. From 1963 (and latest by 1994) until Fall 2007, access to the Southern Side Yard from Defendants' Property was completely blocked by the Diagonal Fence and the Evergreen Barrier.

48. From 1963 (and latest by 1994) until Fall 2007, access to the Southern Side Yard from Defendants' Property was only possible through Plaintiff's Property.

49. Plaintiff and Plaintiff's Parents' dominion over the Southern Side Yard and the Maintained Lawn Area was open and notorious.

50. From 1963 (and latest by 1994) until Fall 2007, the Southern Side Yard and the Maintained Lawn Area were usually cultivated or improved.

51. Plaintiff and Plaintiff's Parents' possession of the Southern Side Yard and the Maintained Lawn area was open and notorious.

52. The activities of Plaintiff and Plaintiff's Parents in the Southern Side Yard and the Maintained Lawn Area were sufficiently open to put a reasonably diligent owner on notice.

53. Plaintiff and Plaintiff's Parents' possession of the Southern Side Yard and the Maintained Lawn area was hostile in nature.

54. Plaintiff and Plaintiff's Parents' possession of the Southern Side Yard and the Maintained Lawn area was under a claim of right.

55. The topography, including natural and man-made borders, of Plaintiff's Property and Defendants' Property provided a reasonable basis for the belief that the Southern Side Yard and the Maintained Lawn Area were part of and belonged to the Plaintiff's Property.

56. Defendants' predecessors in title acquiesced to Plaintiff and Plaintiff's Parents' dominion over the Southern Side Yard and the Maintained Lawn Area for a period of time not fewer than ten (10) consecutive years.

57. At all relevant times, none of Defendants' predecessors in title made changes to the Side Yard, the Diagonal Fence, or to the Evergreen Barrier.

58. On the Defendants' Purchase Date, the Side Yard, as well as the Diagonal Fence and Evergreen Barrier bounding the Side Yard, were still in existence and were fully visible and readily apparent to Defendants.

59. The Defendants were aware that the entire Side Yard and the Maintained Lawn Area were possessed by and maintained by the Plaintiff.

60. Subsequent to Defendants' Purchase Date, the Defendants requested to purchase the Side Yard and the Maintained Lawn Area from Plaintiff.

## AS AND FOR A SECOND CAUSE OF ACTION (EJECTMENT)

61. Plaintiff repeats, restates and realleges each and every of the allegations contained in Paragraphs "1" through "60" inclusive of this Amended Complaint, as if each were fully stated herein.

62. Plaintiff is seized and possessed of the Southern Side Yard and the Maintained Lawn Area in fee simple absolute, free and wholly discharged of any and every such claim of Defendants, and Defendants have no legal right or entitlement to occupy and possess the Southern Side Yard and the Maintained Lawn Area, or any portion thereof.

63. Defendants are currently occupying the Southern Side Yard and the Maintained Lawn Area without valid excuse or authority to do so.

## AS FOR A THIRD CAUSE OF ACTION (TRESPASS)

64. Plaintiff repeats, restates and realleges each and every of the allegations contained in Paragraphs "1" through "63" inclusive of this Amended Complaint, as if each were fully stated herein.

65. Subsequent to Defendants' purchase of Defendants' Property, Defendants knowingly and intentionally constructed and paved a walkway and erected a fence on a portion of Plaintiff's Property, including but not limited to the Southern Side Yard and the Maintained Lawn Area, without justification or the permission or consent of Plaintiff.

66. Defendants intentionally removed the Diagonal Fence that was on Plaintiff's property, including but not limited to or exclusive of the Southern Side Yard, without justification or the permission or consent of Plaintiff.

67. Defendants intentionally removed the Evergreen Barrier that was on Plaintiff's property, including but not limited to or exclusive of the Southern Side Area, without justification or the permission or consent of Plaintiff.

68. Defendants are currently utilizing the Southern Side Yard and the Maintained Lawn Area as a back entranceway to Defendants' house.

69. By the foregoing acts, Defendants have wrongfully used and continue to use Plaintiff's property, including the Southern Side Yard and the Maintained Lawn Area, without justification or the permission or consent of Plaintiff.

70. No covenant, easement, or prescriptive right exists for Defendants to enter onto Plaintiff's Property including the Southern Side Area and the Maintained Lawn Area.

71. As a result, Defendants have trespassed on Plaintiff's Property including the Southern Side Area and the Maintained Lawn Area, and have deprived Plaintiff of the use of Plaintiff's Property including the Southern Side Area and the Maintained Lawn Area.

72. As a result of Defendants' trespass, Plaintiff has been damaged in the amount of Five Hundred Thousand and 00/100 dollars ($500,000.00).

## AS AND FOR A FOURTH CAUSE OF ACTION (NUISANCE)

73. Plaintiff repeats, restates and realleges each and every of the allegations contained in Paragraphs "1" through "72" inclusive of this Amended Complaint, as if each were fully stated herein.

74. Defendants' aforestated actions have constituted an intentional interference with Plaintiff's right to use and enjoy Plaintiff's Property.

75. Defendants' interference has been substantial in nature.

76. Defendants' interference was intentional.

77. Defendants' interference was unreasonable in character.

78. Defendants' interference constitutes an interference with Plaintiff's Property right to use and enjoy Plaintiff's Property.

79. The interference was caused by Defendants' conduct in acting.

80. Upon information and belief, Defendants are utilizing the Southern Side Yard as an entranceway to a back entrance from Defendants' backyard to a dwelling, *i.e.,* a rental property, within the basement of Defendants' house in violation of local zoning ordinances, and that therefore this activity is inappropriate to the location.

81. Upon information and belief, a greater number of families than permitted by the local zoning ordinances are residing in Defendant's house, and that therefore this activity is inappropriate to the location.

82. That as a result of the foregoing, Defendants have created a private nuisance on Plaintiff's Property.

83. As a result of Defendants' nuisance, Plaintiff has been damaged in the amount of Five Hundred Thousand and 00/100 dollars ($500,000.00).

### AS FOR A FIFTH CAUSE OF ACTION (CONVERSION)

84. Plaintiff repeats, restates and realleges each and every of the allegations contained in Paragraphs "1" through "83" inclusive of this Amended Complaint, as if each were fully stated herein.

85. That in Fall 2007, Defendants willfully exercised unauthorized dominion and control over the Southern Side Yard and the Maintained Lawn Area.

86. Defendants intentionally, willfully, and maliciously removed, discarded, damaged, and/or destroyed Plaintiff's property with the knowledge that they lacked authorization to touch or otherwise remove, discard, and/or destroy Plaintiff's property.

87. Defendants removed the Diagonal Fence that belonged to Plaintiff in Southern Side Yard.

88. Defendants removed the southern paved portion of the Side Yard that was constructed and maintained by Plaintiff and Plaintiff's Parents.

89. Defendants removed, cut, and/or damaged at least a portion of the Evergreen Barrier that belonged to the Plaintiff to facilitate access to the Southern Side Yard from the northeastern front corner of Defendants' house.

90. As a result of Defendants' conversion, Plaintiff has been damaged in the amount of Eighty Thousand and 00/100 dollars ($80,000.00).

## AS AND FOR A SIXTH CAUSE OF ACTION (RPAPL § 861)

91. Plaintiff repeats, restates and realleges each and every of the allegations contained in Paragraphs "1" through "90" inclusive of this Amended Complaint, as if each were fully stated herein.

92. On, near, or abutting the border between Plaintiff's Property and Defendants' Property existed certain trees that at all relevant times were wholly on Plaintiff's Property.

93. At all relevant times, said trees were maintained and cared for solely by Plaintiff or Plaintiff's Parents.

94. Defendants knew that the trees were on Plaintiff's Property and were maintained and cared for by Plaintiff and not by Defendants' predecessors in title.

95. Subsequent to purchasing Defendants' Property, Defendants and/or their agents knowingly and willingly cut, removed, injured, damaged and destroyed the trees on the property of Plaintiff.

96. Said trees were removed by Defendants and/or their agents without the consent of the owner Plaintiff.

97. Defendants had no cause to believe the trees that were cut, removed, injured, damaged and destroyed were on land that was their own.

98. Defendants had no cause to believe that they had an easement or right of way across Plaintiff's land that permitted such cutting, removal, injuring, damaging and destruction of said trees.

99. Defendants had no cause to believe that they had a legal right to harvest and/or disturb, or otherwise modify, the lands upon which the trees stood.

100. The cutting, removal, injuring, damaging and destruction of said trees from the damaged the Plaintiff's property.

101. By reason of the foregoing Defendants have violated Section 861 of the New York Real Property Actions and Proceeding Laws, which provides for a cause of action for cutting, removing, injuring or destroying trees or timber and damaging lands thereon.

102. Pursuant to § 861(1) of the New York Real Property Actions and Procedures Law, Defendants are liable for treble damages done to Plaintiff and Plaintiff's Property caused by his cutting, removal, injuring, damaging and destruction of said trees.

103. By Defendants' cutting, removal, injuring, damaging and destruction of said trees, Plaintiff has been damaged in the amount of Fifty Thousand and 00/100 dollars ($50,000.00).

104. By reason of the foregoing and pursuant to the allowance of treble damages under RPAPL § 861, Plaintiff is entitled to One Hundred Fifty Thousand and 00/100 dollars ($150,000.00).

**PRAYER FOR RELIEF**

      **WHEREFORE**, Plaintiff hereby respectfully requests judgment against Defendants as follows:

1. On the First Cause of Action (Adverse Possession), that Plaintiff seeks to quiet title pursuant to RPAPL Art. 15, and to obtain fee simple ownership of all right, title and interest in the currently disputed Southern Side Yard and Maintained Lawn Area, and a declaration that Defendants do not have any right, title or interest in or lien on the currently disputed Southern Side Yard and Maintained Lawn Area;

2. On the Second Cause of Action (Ejectment), Plaintiff seeks judgment ordering permanent ejectment of Defendants from Plaintiff's Property including the Southern Side Yard and the Maintained Lawn Area, and that Defendants be enjoined and forever barred from entering and trespassing on Plaintiff's Property including the Southern Side Yard and the Maintained Lawn Area;

3. On the Third Cause of Action (Trespass), that Plaintiff has been damaged in the sum of Five Hundred Thousand and 00/100 dollars ($500,000.00) by reason of Defendants' trespass;

4. On the Fourth Cause of Action (Nuisance), that Plaintiff has been damaged in the sum of Five Hundred Thousand and 00/100 dollars ($500,000.00) by reason of Defendants' creation of a private nuisance;

5. On the Fifth Cause of Action (Conversion), Plaintiff seeks to recover damages in the sum of Eighty Thousand and 00/100 dollars ($80,000.00) plus punitive and exemplary damages from Defendants in an amount to be determined at trial;

6. On the Sixth Cause of Action (RPAPL §861), the amount of One Hundred Fifty Thousand and 00/100 dollars ($150,000.00) for Defendants' violation of RPAPL §861; and

7. Granting Plaintiff such further relief as this Court may deem just, equitable and proper, along with costs and disbursements.

## JURY TRIAL DEMAND

The Plaintiff demands trial by jury of all issues triable of right to a jury.

Dated: December 17, 2010                         Respectfully submitted,
       New York, New York

                                                 */s/ Ira Stickler*
                                                 _____
                                                 IRA STICKLER (IS4359)
                                                 Attorney for Plaintiff
                                                 50 Battery Place, Apt. 7A
                                                 New York New York 10280
                                                 irastickler@gmail.com
                                                 (917) 817 – 7692


                                                 */s/ Logan R. Marc*
                                                 _____
                                                 LOGAN R. MARC (*pro hac vice*)
                                                 Attorney for Plaintiff
                                                 29 Saint Marks Place, Apt. A
                                                 New York New York 10003
                                                 logan.marc@gmail.com
                                                 (646) 236 – 2302