

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.

★ JUN 2 7 2011 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MARSHA STICKLER,
                Plaintiff,

    – against –

HANOCH HALEVY AND ERIS HALVEY,

                Defendants.

**MEMORANDUM AND
ORDER**

10-CV-4138

**JACK B. WEINSTEIN, Senior United States District Judge:**

I.    Introduction .................................................................................................. 2
II.   Facts and Procedural History ....................................................................... 3
    a.  Ownership of the Plaintiff's Property ................................................... 3
    b.  Ownership of Defendants' Property ...................................................... 3
    c.  The Disputed Area ................................................................................ 4
III.  View .......................................................................................................... 7
IV.  Parties' Claims ........................................................................................... 7
V.   Chronology ................................................................................................ 8
VI.  Subject Matter Jurisdiction ......................................................................... 9
VII.  Law and Application ................................................................................... 9
    a.  Motion for Summary Judgment ............................................................ 9
    b.  Adverse Possession ............................................................................ 10
        i.    Burden of Proof............................................................................ 10
        ii.   Amendments to the Law ............................................................... 11
        iii.  Possession ................................................................................... 14
             1.  Usually Cultivated or Improved............................................. 14
             2.  Protected by a Substantial Inclosure...................................... 15
        iv.  Hostile and Under Claim of Right ............................................... 16
        v.    Actual........................................................................................... 17
        vi.   Open and Notorious ..................................................................... 17
        vii.  Exclusive..................................................................................... 18
        viii.  Continuous for the Required Statutory Period ............................. 19
    c.  Light, Air, and Access Easements ...................................................... 20

    d. Nuisance.........................................................................................................22

       i.    For Use of Disputed Area ...............................................................23

       ii.   For Violation of Zoning Ordinance ...................................................23

    e. Ejectment .................................................................................................23

    f. Trespass....................................................................................................24

    g. Conversion ...............................................................................................24

    h. RPAPL § 861 ...........................................................................................24

    i. Punitive Damages .....................................................................................26

VIII.  Conclusion ..........................................................................................................26

### I.    Introduction

Plaintiff Martha Stickler and defendants Eris and Hanoch Halevy dispute rights to a three-and-a-half-foot wide, 100-foot long strip of land that lies between their residences. The Halevys have put up a fence to mark their claim. Defendants move for summary judgment based primarily on title of record. Stickler opposes summary judgment relying essentially on adverse possession. *See* N.Y. Real Property Actions and Proceedings Laws (N.Y. RPAPL) § 501. She also seeks punitive damages.

Summary judgment for adverse possession and related claims of trespass, ejectment, and conversion are denied because there are open questions of fact requiring resolution. Summary judgment is granted for defendants on the nuisance and punitive damages claims; their behavior in fencing in the disputed property cannot be viewed as an intentional and unreasonable interference because they were acting in reliance on public records. For the same reason, punitive damages would be inappropriate and are denied. Plaintiff's claim for damages to a hedge under N.Y. RPAPL § 861 is dismissed on de minimis grounds.

A trial will be required, unless the parties settle. As the Court of Appeals for the Second Circuit, relying on the Old Testament, has recently reminded us, division of property on

2

equitable principles is frequently unavailable. *See United States v. Davis*, 2011 WL 2162897, at *1 (2d Cir. June 3, 2011) ("Unlike in the Judgment of Solomon, *see* 1 Kings 3:16-28, neither party has blinked, and we are therefore in the unenviable position of determining who gets the [property], and who will be left with nothing . . . In making that determination, we take comfort in our obligation to follow the rules that [the legislature] has given, and recognize that justice is done by providing the predictable result that [the legislature] intended.").

Respected more modern writings reflect on the particular problem now presented. "'Good fences make good neighbors,'" only when they agree on the line between their properties, suggested Robert Frost in *Mending Wall* (1914). FAMILIAR QUOTATIONS 926 (John Bartlett ed., 1968). Frost also noted: "Something there is that doesn't love a wall." *Id.* And Gilbert Keith Chesterton has reportedly advised: "Don't ever take a fence down until you have the reason why it was put up," ascribed to Chesterton by John F. Kennedy in a 1945 notebook. FAMILIAR QUOTATIONS, *supra* at 919.

## II.     Facts and Procedural History

### a.  Ownership of the Plaintiff's Property

Murray and Eleanor Lax ("plaintiff's parents"), bought a then undeveloped tract of land at 962-964 East 29th Street, County of Kings, New York NY, in 1962. They promptly constructed a house on the property and lived there until their deaths. In March 2004, the surviving parent, her mother, transferred the property to plaintiff while retaining a life estate. Eleanor Lax died in April 2006. Compl. ¶ 5-8.

### b.  Ownership of Defendants' Property

Estelle and Bernard Trachtenberg owned the adjoining house at 966 East 29th Street from approximately 1929 to 1993. In 1993, title was transferred to their children, Joseph and Richard

Trachtenberg, who owned the property until May 1996. It was then transferred to Eva and Schmuel Muller. Defendants Hanoch and Eris Halevy purchased from the Mullers in April 2006. Compl. ¶ 29-33; Def.'s Statement Pursuant to Local Rule 56.1 ("Def.'s 56.1 Statement") ¶ 1-5.

### c. The Disputed Area

The two properties share a boundary along the south side of plaintiff's and the north side of defendants' properties. There is a strip of land between the two houses that is approximately eight and a half feet wide and runs the length of the houses ("Side Yard"). Plaintiff claims that she owns this entire strip, while defendants maintain that plaintiff only owns the strip of the Side Yard about five feet in width next to her house. This leaves a strip of approximately three and a half feet adjacent to defendants' house as the "Disputed Area." Def.'s 56.1 Statement ¶ 9-16. *See* Diagram I, *infra.*

During construction of plaintiff's house in 1962, the following improvements were made to the Side Yard: one, removed was a hedge located along the length of defendants' house, Trachtenberg Aff. ¶ 3, Apr. 28, 2010; two, leveled was the area so it was at the same height as the rest of plaintiff's property, Pl.'s Mem. in Opp'n ("Pl.'s Memo") 5-6, June 1, 2010; Compl. ¶ 14; three, installed was a retaining wall between the backyards of the two properties, Pl.'s Memo Ex. 28; Compl. ¶ 10; *see* Diagram I, *infra*; four, paved was a two-part path approximately two feet wide alongside each house with a median in between where sod was planted, Compl. ¶ 16; five, planted was a hedge at the front of the lawn area with a width of approximately seven feet, Compl. ¶ 18-19. The last two of these "improvements" were allegedly maintained by plaintiff and her predecessors. Compl. ¶ 17, 21.

Plaintiff claims that the hedge blocked access to the Disputed Area from defendants' front yard, Pl.'s Memo 9-10. Defendants maintain that there was direct access to the Disputed Area through their front yard despite the hedge, Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Memo") 8-9, May 6, 2010.

At some time between 1963 and 1994, plaintiff's parents erected a fence on top of and along the full length of the backyard retaining wall, which continued to exist until Fall 2007, when it was removed by defendants. Compl. ¶ 10-11, 87. The diagonal portion of the fence may have been installed in the 1980s. Stickler Dep. 84:2-85:2, Mar. 4, 2011; *See* Diagram I, *infra*. While plaintiff claims that the diagonal portion of the fence was chain-link, allowing no access to the Disputed Area, Compl. ¶ 12, 15, defendants assert that when they bought the property, there was a gate that allowed access from their backyard, Def.'s 56.1 Statement ¶ 42; Hanoch Halevy Aff. ("Hanoch Aff.") ¶ 14-16, May 5, 2011; Eris Halevy Aff. ("Eris Aff.") ¶ 14-16, May 5, 2011; Dicce Aff. ¶7-14, June 7, 2011. There is an open question as to whether this gate existed, and if so, when it was installed. Plaintiff's family also erected a fence along the front edge of the Disputed Area that protected the area from pedestrians on the sidewalk. Stickler Aff. ¶ 17. They allegedly made use of the entire Disputed Area for recreation and storage over the years. *Id.* ¶ 19; Pl.'s Memo Ex. 14; Rosenbluh Aff. ¶ 4; Pl.'s Memo Ex. 15.

When defendants bought their property in 2006, they claim they believed that they owned the Disputed Area. Def.'s 56.1 Statement ¶ 34. There were stairs that led from the Disputed Area to defendants' backyard, *id.* ¶ 43, an outside light overhanging the Disputed Area was attached to defendants' house, and an oil valve protruded from defendants' house into this area, Hanoch Aff. ¶ 19; Eris Aff. ¶ 17.

After their purchase, defendants approached plaintiff offering to purchase some part of the Side Yard. Compl. ¶ 37. Plaintiff claims that the offer included the Disputed Area, Stickler Aff. ¶ 25, while defendant claims that his offer was to purchase plaintiff's portion of the Side Yard or an easement to use it, Hanoch Halevy Dep. ("Hanoch Dep.") 132:4-138:2, Mar. 7, 2011. This offer was rejected.

In the fall of 2007, defendants removed a substantial portion of the front hedge, lifted a portion of the pavement on the Disputed Area, took out the fence blocking access to the Disputed Area from defendants' backyard, and erected a fence along the border of the Disputed Area blocking plaintiff's access to it. Compl. ¶ 38-39. *See* Diagram II, *infra*. Plaintiff also claims that defendants are using their house as a rental property in violation of local zoning ordinances. Compl. ¶ 80-81.

Diagram I: Approximate diagram (not to scale) of the properties in question in early 2007.



East 29th Street

Diagram II: Approximate diagram (not to scale) of the properties in question at present.



## III. View

Because of the difficulties of visualizing the property, with the parties' consent, a view was taken by the court.

## IV. Parties' Claims

Plaintiff claims title to the strip of land lying between defendants' house and her property through adverse possession. Her related claims of nuisance, ejectment, trespass, and conversion are based on defendants' continued use of the disputed land. She also makes a claim of nuisance against defendants for using their house partly as a rental property in violation of the local zoning ordinance, and a claim under N.Y. RPAPL § 861 against defendants for removing a part of the hedge at the front of the Disputed Area. She seeks punitive damages for the conscious disregard of her rights by the defendants.

7

Defendants claim ownership of the land, and their defense against all claims is based on their recorded title. They rely on public records.

## V.    Chronology

(based on somewhat inconsistent contentions)

| 1929 | Estelle and Bernard Trachtenberg become owners of defendants' property | Def.'s 56.1 Statement ¶ 4 |
|------|------------------------------------------------------------------------|---------------------------|
| 1962 | N.Y. RPAPL Article 5 added | |
| May 3, 1962 | Murray and Eleanor Lax (plaintiff's parents) purchase plaintiff's property | Compl. ¶ 5 |
| October 1962 | Plaintiff's parents build house on plaintiff's property | Compl. ¶ 6 |
| October 1962 | Hedge on right side of defendants' house removed during construction by plaintiff's parents | Trachtenberg Aff. ¶ 3, Apr. 28, 2010 |
| By December 20, 1962 | Plaintiff's parents lowered and leveled Side Yard and installed retaining wall separating backyards | Pl.'s Memo Ex. 28; Compl. ¶ 14 |
| Between 1963 and 1994 | Plaintiff's parents paved a two-part path with a median in between where they planted grass | Compl. ¶ 16 |
| Between 1963 and 1994 | Plaintiff's parents planted a hedge at the front of Side Yard | Compl. ¶ 18-19 |
| Between 1963 and 1994 | Plaintiff's parents installed a fence on top of the back retaining wall (the straight and diagonal portion) | |
| 1976 | Joseph Rosenbluh became a tenant on plaintiff's property | Rosenbluh Aff. ¶ 1 |
| 1976 | Hedge in front, fence along retaining wall & diagonal fence may have existed when he moved in | Rosenbluh Aff. ¶¶ 2(c),(d), (h) |
| Mid-1980s | Diagonal fence was installed in the back | Stickler Dep. 84:2-85:2, Mar. 4, 2011 |
| 1993 | End of Estelle & Bernard Trachtenberg's ownership of defendants' property | Def.'s 56.1 Statement ¶ 4 |
| April 29, 1994 | Defendants' property transferred from Estate of Estelle Trachtenberg to sons Joseph and Richard Trachtenberg | Compl. ¶ 29 |
| May 8, 1996 | Eva and Schmuel Muller purchased defendants' property | Def.'s 56.1 Statement ¶ 2; Compl. ¶ 31 |
| 2003 – March 1, 2004 | N.Y. RPAPL § 861 added & amended | |
| March 22, 2004 | Eleanor Lax transfers plaintiff's property | Compl. ¶ 8 |

| | to plaintiff, Martha Stickler; Eleanor Lax retains life estate | |
| April 21, 2006 | Eleanor Lax dies | Compl. ¶ 8 |
| April 26, 2006 | Defendants' purchased property from Mullers | Def.'s 56.1 Statement ¶ 1; Compl. ¶ 33 |
| Between April 2006 and Fall 2007 | Defendants approach plaintiff to purchase some part of Disputed Area/easement over plaintiff's portion of Side Yard | Compl. ¶ 36-37 |
| Fall 2007 | Defendants removed a substantial portion of the hedge, removed a portion of the pavement on Disputed Area, removed a fence blocking access to Disputed Area, and erected a fence along the border of Disputed Area, essentially down the middle of the space between the homes | Compl. ¶ 38-39 |
| July 7, 2008 | N.Y. RPAPL Article 5 amended | |

## VI. Subject Matter Jurisdiction

This court has diversity jurisdiction. *See* 28 U.S.C. § 1332. Plaintiff is a resident of New Jersey and defendants are residents of New York. *See Strawbridge v. Curtiss,* 7 U.S. 267 (1806). A single plaintiff may aggregate all claims against a defendant in order to meet the required amount in controversy. *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 585 (2005). Here, plaintiff seeks $500,000 on her trespass claim, $500,000 on her nuisance claims, $80,000 on her conversion claim, and $150,000 on her claim under N.Y. RPAPL § 861, in addition to the value of the disputed property. The reasonably computed amount in controversy is above the $75,000 statutory requirement.

## VII. Law and Application

### a. Motion for Summary Judgment

Summary judgment is appropriate if "there is no genuine issue as to any material fact and if the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also Mitchell v. Washingtonville Central School District*, 190

9

F.3d 1, 5 (2d Cir. 1999). Dismissal is warranted when there is no genuine issue as to any material fact after construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor. Fed. R. Civ. P. 56(c); *see Anderson*, 477 U.S. at 247-50, 255; *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009).

The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the moving party appears to meet this burden, the opposing party must produce evidence that raises a question of material fact to defeat the motion. *See* Fed. R. Civ. P. 56(e). This evidence may not consist of "mere conclusory allegations, speculation or conjecture." *Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996); *see also Delaware & Hudson Ry. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) ("Conclusory allegations will not suffice to create a genuine issue.").

### b. Adverse Possession

Because there are still unresolved questions of fact, summary judgment on the adverse possession claim is inappropriate. The requirements for adverse possession are set out in § 501(2) of N.Y. RPAPL currently (and essentially as they were prior to recent amendments) as follows:

> An adverse possessor gains title to the occupied real property upon expiration of the statute of limitations for an action to recover real property pursuant to subdivision (a) of section two hundred twelve of the civil practice law and rules, provided that the occupancy, as described in section[] . . . five hundred twenty-two of this article, has been adverse, under claim of right, open and notorious, continuous, exclusive, and actual.

### i. Burden of Proof

New York disfavors procuring title through adverse possession. *Belotti v. Bickhardt*, 127 N.E. 239, 243 (N.Y. 1920). The party claiming title to real property through adverse possession

must prove all necessary elements with "clear and convincing evidence." Under N.Y. RPAPL §

311, a presumption in favor of the holder of legal title to the property exists:

> In an action to recover real property or the possession thereof, the
> *person who establishes a legal title to the premises is presumed to
> have been possessed thereof* within the time required by law; and
> the occupation of the premises by another person is deemed to
> have been under and in subordination to the legal title *unless the
> premises have been held and possessed adversely to the legal title
> for ten years before the commencement of the action.*

N.Y. RPAPL § 311 (emphasis added).

In the present case, it appears from the evidence thus far presented that defendants have

legal title to the Disputed Area. They point to filed deeds for plaintiff's property dating from

1962, 1963, and 2004 that state that plaintiff's property measures forty feet along the side of East

29th street as well as along the westerly side of the property. *See* Def.'s Memo Ex. F, H, J. In

addition, they rely upon a 2006 deed for their own (defendants') property that indicates that their

lot is twenty-eight feet along the westerly and easterly sides. They also point to surveys of the

two properties, title insurance, mortgages, and other documents indicating the same lines. Def.'s

56.1 Statement ¶ 17-30. Defendants arguably hold legal title to the Disputed Area, giving rise to

a presumption of possession in their favor which plaintiff must disprove with clear and

convincing evidence. Def.'s 56.1 Statement ¶ 31-2.

### ii. Amendments to the Law

In 2008, the New York State Legislature amended Article 5 of the Real Property Actions

and Proceedings Law and altered the standards for an adverse possession claim. Incorporated

were three main changes. First, "claim of right" is defined:

> A claim of right means a reasonable basis for the belief that the
> property belongs to the adverse possessor or property owner . . . .

N.Y. RPAPL § 501(3). Second, one of the traditional requirements of possession is changed

from:

> land is deemed to have been possessed and occupied . . . [w]here it
> has been usually cultivated or improved.

N.Y. RPAPL § 522 (1962), to:

> land is deemed to have been possessed and occupied . . . [w]here
> there have been acts sufficiently open to put a reasonably diligent
> owner on notice.

N.Y. RPAPL § 522 (2008). Finally, it deems *de minimis* nonstructural encroachments and

maintenance activities permissive as follows:

> 1. . . . the existence of de minimus non-structural encroachments
> including, but not limited to, fences, hedges, shrubbery, plantings,
> sheds and non-structural walls, shall be deemed to be permissive
> and non-adverse.
>
> 2. . . . the acts of lawn mowing or similar maintenance across the
> boundary line of an adjoining landowner's property shall be
> deemed permissive and non-adverse.

N.Y. RPAPL §543.

   The text and supporting legislative history indicate that the 2008 legislation was designed

to discourage "bad faith" adverse possession claims possible under previous law. *See, e.g.,*

*Walling v. Przybylo*, 7 N.Y.3d 228 (2006) (holding that conduct will prevail over knowledge and

that adverse possession claims can succeed despite the claimant's knowledge of superior legal

title). Harmonious relationships between urban neighbors were encouraged by discouraging

their use of adverse possession offensively. The doctrine was to be focused on good faith

disputes over title to real property. *See Introducer's Mem. In Support,* S. 7915c, 231st Sess. 1-2

(N.Y. 2008) (stating that incentive to create "mischief between neighbors and . . . families" must

be curtailed). Under the previous sections 511 and 521, actual knowledge that another person

was the title owner did not bar a successful adverse possession claim. *See also* S. 5364-A, 2007

Leg., 230th Sess. (N.Y. 2007) (a bill was passed, but not signed; it made proof of absence of knowledge part of a claim for adverse possession; there was concern over evidentiary issues with this subjective standard, *Mem. In Opp'n,* S. 7915c, 231st Sess. 1-2 (N.Y. 2008) (statement of Sen. Little)).

Were these amendments applied to the case at hand, there might be some effect on the plaintiff's case. They make success in an adverse possession claim harder by requiring a good-faith reasonable claim of right. New York courts have not applied these 2008 amendments retroactively. A statute may only be applied retroactively if it does not interfere with vested rights. *See Matter of Hodes v Axelrod,* 515 N.E.2d 612, 615 (N.Y. 1987). The court held in *Franza v. Olin* that "it is well-settled law that the adverse possession of property for the statutory period vests title to the property in the adverse possessor." 897 N.Y.S.2d 804, 805 (App. Div. 2010) (citations omitted).

The statute of limitations for an action to recover real property is ten years. N.Y. Civil Practice Laws and Rules § 212. Plaintiff's claim for adverse possession arguably began in 1962 with the construction of her parents' house and improvements to the Disputed Area. Therefore her title to this ground would have vested long before the 2008 amendments were enacted. Under *Franza,* "inasmuch as title to the disputed property would have vested in plaintiff prior to the enactment of the 2008 amendments . . . application of those amendments to plaintiff is unconstitutional." 897 N.Y.S.2d at 806. Plaintiff's claim is governed by the earlier version of section 522 of the RPAPL statute, and the additional requirements of the current sections 501(3) and 543 do not apply.

### iii. Possession

Where a claim of adverse possession is not based on a written instrument, an adverse possessor is considered to have possessed and occupied only if the land has been "usually cultivated or improved" *or* "protected by a substantial inclosure." N.Y. RPAPL § 522.

#### 1. Usually Cultivated or Improved

Whether a particular property is usually cultivated or improved varies with "'the nature and situation of the property and the uses to which it can be applied'". *Ray v. Beacon Hudson Mountain Corp.*, 666 N.E.2d 532, 535 (N.Y. 1996) (quoting *Ramapo Mfg. Co. v. Mapes*, 110 N.E. 772, 776 (1915)). Cutting grass and maintenance of shrubbery has been found to satisfy the usual cultivation and improvement requirement. *See Birnbaum v. Brody*, 548 N.Y.S.2d 691 (App. Div. 1989) (holding that plaintiffs who had maintained grass and shrubbery in the disputed area had met the requirement); *see also Shinnecock Hills & Peconic Bay Realty Co. v. Aldrich*, 116 N.Y.S. 532 (App. Div. 1989). To cultivate has been defined "to improve the product of the earth by manual industry[,]" *Shinnecock*, 116 N.Y.S. at 537. Since the courts found that mowing was cultivation in commercial farmland, application to an urban neighborly dispute about shrubbery and mowed grass between houses is inapt. Planting and maintaining shrubbery is not enough in circumstances where the land would be better suited to a more intensive economic use. *See, e.g., City of Tonawanda v. Ellicott Creek Homeowners Ass'n, Inc.*, 449 N.Y.S.2d 116 (App. Div. 1982); *Simpson v. Kao*, 636 N.Y.S.2d 70 (App. Div. 1995). Leveling an area, removing the natural growth, and paving may also meet section 522 requirements. *See, e.g., Golden hammer Auto Body Corp. v. Consolidated Rail Corp.*, 542 N.Y.S.2d 320, 321 (App. Div. 1989).

Beginning in 1962, plaintiff and her predecessors allegedly used and improved the Disputed Area in several ways that a reasonable jury could find falls within the definition of

14

adverse cultivation and improvement. When building their house, plaintiff's parents removed a hedge that ran along the Disputed Area and also leveled the ground to make it the same height as the rest of plaintiff's property. Trachtenberg Aff. ¶ 3, April 28, 2010; Pl.'s Memo 5-6, June 1, 2010; Compl. ¶ 14. They later put down pavement on the area and planted a lawn and hedge on it. Compl. ¶ 16-19. Plaintiff and her predecessors maintained these improvements over the years. Compl. ¶ 17, 21. Plaintiff's family also made use of this area for recreation and storage. Stickler Aff. ¶ 19; Rosenbluh Aff. ¶ 4. A jury might find that plaintiff's (and her predecessors') use was "usual" cultivation and improvement for property of this kind under the statute and therefore a basis for acquiring adverse title.

## 2. Protected by a Substantial Inclosure

A substantial inclosure may provide notice of boundaries. *Ray*, 666 N.E.2d at 534 (holding that parcel was substantially inclosed by permanent stone path, terraced rock garden, and other natural objects). Hedges can form inclosures, *McCosker v. Rollie Estates, Inc.*, 168 N.E.2d 93 (N.Y. 1959). Fences, walls, or natural objects are not necessary when use is conspicuous enough to put an owner on notice of the boundaries of the adverse possessor's claim. *Id.* The inclosure need not be complete, *Brown v. Doherty*, 87 N.Y.S. 563, 565 (App. Div. 1904).

Plaintiff's family allegedly inclosed the Disputed Area with a fence on top of the retaining wall which blocked access from defendants' backyard. Although there is a dispute about whether there was a gate on this fence, a reasonable jury might find that there was no gate or opening. Dicce Aff. ¶ 5-6, May 26, 2011; Pl.'s Memo Ex. 7. On the front end of the Disputed Area, plaintiff's predecessors planted a hedge and a fence in front of the hedge to protect the area from pedestrians on the sidewalk. Compl. ¶ 16-19; Stickler Aff. ¶ 17. Plaintiff has submitted

evidence – disputed by defendants – supporting her assertion that this hedge effectively blocked access from defendants' front yard to the Disputed Area. Rosenbluh Aff. ¶ 2(h); Hanoch Dep. 106:5-19. A reasonable jury might find the hedge to be part of a substantial inclosure, even if it did not completely block access. Natural objects, such as the drop in elevation between the properties may be taken into account when determining if such an inclosure existed.

### iv. Hostile and Under Claim of Right

For possession to be hostile it must be without permission and non-consensual. *Goldschmidt v. Ford Street, LLC*, 872 N.Y.S.2d 493 (App. Div. 2009) (holding that consensual use of disputed area defeats hostile element of plaintiff's claim). Seeking permission, but little else, would negate hostility. *United Pickle Products Corp. v. Prayer Temple Community Church*, 843 N.Y.S.2d 1, 3 (App. Div. 2007). There is a presumption of hostility if use is open, notorious, and continuous for the statutory period. *See Sincicropi v. Town of Indian Lake*, 538 N.Y.S.2d 380, 381 (App. Div. 1989).

Defendants argue that for possession to be under a claim of right, the possessor must be under a belief of ownership. Def.'s Memo 15. Some courts have held that plaintiff's affirmative knowledge of another's legal title in the property defeats her adverse possession claim if knowledge existed during the statutory period. *Tonawanda*, 449 N.Y.S.2d at 121. The Appellate Division held more recently that a possessor's subjective belief or motive is irrelevant to the claim; the manifest acts of the possessor are what put the owner on notice of the hostile claim. *Walling v. Przybylo*, 851 N.E.2d 1167, 1170 (N.Y. 2005) (overruled by 2008 amendments to N.Y. RPAPL Article 5, but still relevant to instant case). *See also Robinson v. Robinson*, 825 N.Y.S.2d 277, 280-281 (App. Div. 2006) ("irrelevant are plaintiffs' . . . subjective belief that [defendant] may have been the rightful owner of the property") (citations omitted).

There is a dispute over whether plaintiff and her predecessors received some kind of implied permission from defendants' predecessors to use the Disputed Area. Trachtenberg Aff. ¶ 8, Mar. 30, 2011; Muller Aff. ¶ 18. A reasonable jury might agree that the plaintiff's parents did not seek the implied permission of the defendants' predecessors. Assuming that subjective belief of the possessor is irrelevant, the fact that plaintiff's predecessors may have known that the land was not theirs does not necessarily change the outcome. If a jury finds that their use and occupation of the Disputed Area infringed on the defendants' interests without permission, the claim could be found to be hostile.

### v. Actual

Proof of actual possession is subsumed under the requirements of section 522 for possession or occupation to be recognized. If the land was "usually cultivated or improved" or "protected by a substantial inclosure," plaintiff might meet the burden of actual possession. *See Birnbaum*, 548 N.Y.S.2d at 692. Since a jury could reasonably find usual cultivation or improvement and a substantial inclosure, they might reasonably find actual possession in this case as well.

### vi. Open and Notorious

Possession and adverse use must be open and notorious in order to provide a reasonably attentive owner notice of a possible adverse claim. *Ray*, 88 N.Y.2d at 160. *See also Walling*, 7 N.Y.3d 232 (holding that possessor's actions should put the owner on notice of hostile claim). Cultivation, improvement, and inclosure under section 522 are examples of open and notorious acts that accomplish this purpose. *Ray*, 666 N.E.2d at 535.

Plaintiff's family's conduct in allegedly cultivating and improving and protecting the area with a substantial inclosure might be found to be open and notorious. Defendants argue that

other indications on their property such as an overhanging light, oil valve, and pathway with cement stairs leading to their backyard created a reasonable belief that the area was part of their property. Whether a reasonably attentive owner would have had notice of plaintiff's adverse claim is a question for the jury. *Ramapo*, 110 N.E. at 775.

### vii. Exclusive

Absolute exclusion is not always required. Whether possession was exclusive is "determined in light of the nature of the land, its uses, and the purposes for which it is naturally adapted." *Board of Managers of Soho Intern. Arts Condominium v. City of New York*, 2005 WL 1153752, at *9 (S.D.N.Y 2005) (citation omitted). Possession only needs to be of the type that would characterize an owner's use of the kind of property in question. 3 AM. JUR. 2D *Adverse Possession* § 68 (2011). Occasional use by others that does not interfere with the possessor's activities does not defeat exclusivity. *Robinson*, 825 N.Y.S.2d at 280.

An issue is whether defendants' predecessors had access to the Disputed Area. Defendants rely on a 2008 amendment to N.Y. RPAPL § 543, which declares de minimus encroachments and maintenance of property permissive and non-adverse, but, as noted earlier, see Part V.b.ii.2, *supra*, these statutory amendments do not solve the instant dispute.

The jury might find from plaintiff's evidence that there was effectively no access to the area for defendants. Even if the jury found that there was an entranceway to the area from defendants' property, it might reasonably conclude that mere limited access did not interfere with the plaintiff possessor's activities. Plaintiff arguably may have been acting as an average friendly owner in allowing neighbors to walk on the fringes of her property.

### viii. Continuous for the Required Statutory Period

Under section 212 of New York's Civil Practice Law and Rules, the prescriptive period for adverse possession is ten years. Defendants rely on *Talmage v. Ronald Altman Trust* which indicates a prescriptive period of ten years for those whose possession commenced on or after September 1, 1963 and fifteen years for possession commenced between September 1, 1963 and September 1, 1932. 871 F.Supp. 1577, 1585 (E.D.N.Y. 1994). While the *Talmage* holding has not been overturned, section 212 applies to claims for adverse possession of real property. Whether the prescriptive period used for this case is ten or fifteen years does not decide the case, because plaintiff's claim appears to span well over fifteen years.

Continuous possession need not be constant; it is satisfied with repeated acts that are consistent with the acts of possession of an owner of such a property. *Robinson*, 825 N.Y.S.2d at 280. When a claimant is in possession for less than the prescriptive period, she may tack on a predecessor's adverse possession to her own to satisfy the statutory period, provided there is privity between her and the predecessors. *Talmage*, 871 F.Supp. at 1586; *Rasmussen v. Sgritta*, 305 N.Y.S.2d 816 (App. Div. 1969).

Plaintiff's entire claim could be based on adverse possession that occurred during the time her parents owned the property. Tacking on is also possible because she is the immediate successor of her mother's interest in the property. Privity is satisfied by the transfer of the property that occurred in 2004.

Plaintiff's predecessors' use of the Disputed Area from 1962 arguably was fairly constant. Though neither party offers any evidence on how frequently the property was used, because plaintiff's parents resided on the property during their lifetimes, the use might be found to be continuous. There is no evidence of possible interruptions in use before the fall of 2007.

19

### c. Light, Air, and Access Easements

The elements required to establish an easement by prescription are similar to those required in an adverse possession claim, but while the latter is based on a claim of possession, the former is based on a claim of use. *Rasmussen v. Sgritta*, 305 N.Y.S.2d 816, 818 (App. Div. 1969). A prescriptive easement requires use that is adverse (hostile) under claim of right, open and notorious, and continuous and uninterrupted for the necessary period. *Di Leo v. Pecksto Holding Corp. et al.*, 109 N.E.2d 600, 603 (N.Y. 1952). A presumption of adverse use in favor of the claimant exists when use has been shown to be open and notorious and continuous for the necessary period. *Id.*

Courts have been reluctant to find light and air easements in matters involving large public interests such as elevated railroads or roadways for automotive use. *See In re Brooklyn-Queens Connecting Highway & Parks*, 90 N.E.2d 183 (N.Y. 1949) (Fuld, J.) (construction of expressway and promenade in Brooklyn Heights; record on appeal; dismissing abutting owner's claim of interference with easements of light, air, and access by construction of elevated highway); *Sauer v. City of New York*, 72 N.E. 579 (N.Y. 1904) (elevated Manhattan roadway); *Bennett v. Long Island R. Co.*, 74 N.E. 418 (N.Y. 1905) (dismissing claim for easement on light and air because plaintiff had bought property expressly subject to construction of elevated railroad). Easements on light and air are generally disfavored in major commercial disputes because "they unduly burden the land remaining . . . and interfere with its free alienation and adequate development." *Pica v. Cross County Const. Corp.*, 18 N.Y.S.2d 470, 473 (App. Div. 1940).

A different situation is presented in an urban area such as New York City, especially in the county of Kings, where it is not unusual to have a narrow alley separating adjoining one-

family houses used by both families jointly for their mutual convenience. Given the heterogeneous nature of the population, living in New York requires neighborly consideration and mutual respect, which are necessary for peaceable conduct of business and private life.

There are many more appellate cases dealing with public transportation than the joint use of alleyways for obvious reasons: much more money is involved in the former than the latter. Most residents prefer to live in peace and quiet and cooperate with their neighbors, expecting mutual respect under the ancient Golden Rule, now incorporated in the world's major religions – "[w]hat you do not want done to yourself, do not do to others". Confucius, *The Confucian Analects* in FAMILIAR QUOTATIONS 72 (John Bartlett ed., 1968); *see also, e.g., Matthew* 7:12.

Leading cases recognize that mutual adverse easements for access and use can be acquired by neighboring house owners over the land between their houses. *See Forrest et al., v. Bunnie*, 107 N.Y.S.2d 396 (Sup. Ct. 1951), *aff'd* 117 N.Y.S.2d 676 (App. Div. 1952). *See also Di Leo v. Pecksto Holding Corp.*, 109 N.E.2d 600 (N.Y. 1952) (awarding injunctive relief to remove obstructions to an easement of access on neighboring land granted to plaintiff); *Nicholls v. Wentworth*, 3 N.E. 482 (N.Y. 1885). In *Forrest*, as in the instant case, plaintiff made use of a strip of land along the boundary of adjoining properties for many years but was later prevented from using it when defendant erected an obstruction to access. The court found:

> Reciprocal use of a strip along a common boundary line, comprised of land on both sides, pursuant to an oral or implied agreement, and use as a drive, or passageway, for a period of fifteen years may ripen into an easement. Each owner, by the use of his adjoining neighbor's portion of the way, asserts an adverse right in the portion of the way lying on the other's land . . . one who joins his neighbor in the construction and use of an improved and recognized way along both sides of the common boundary line has given his neighbor more than a mere license. By this reciprocal use the adverse or hostile requirement is inferred . . . The prescriptive right here urged by plaintiff, an incorporeal

> hereditament, is properly based on prescription rather than on
> adverse possession.

*Forrest*, 107 N.Y.S.2d at 400-1. The defendant in that case was directed to remove the wall he had constructed over the driveway because "[a] right of way acquired by prescription, carries with it a right to remove all obstructions to its enjoyment." *Id.* at 401.

In the present case, as in *Forrest*, plaintiff's claim may support an easement by prescription for use of the Disputed Area. Title by adverse possession is disfavored by the New York courts and legislature, and the plaintiff has a high burden of proof because defendants have established recorded title to the Disputed Area for themselves. *See* Part V.b.i-ii, *supra*. But, use that the plaintiff claims she and her predecessors have made of the Disputed Area supports a more easily established prescriptive easement for access to the area which is now blocked by the fence installed by defendants.

There is evidence to suggest that both parties have acquired mutual easements of access over the Disputed Area. As observed in the court's view of the property, the alleyways between houses in the neighborhood appear to be subject to joint use by the residents of adjoining houses. It may be that defendants installed the fence on the disputed property for the protection of their children, but this subjective and understandable motive would not justify excluding an owner of title or an easement to that property.

### d. Nuisance

A nuisance claim requires "(1) an interference substantial in nature, (2) intentional in origin, (3) unreasonable in character, (4) with a person's property right to use and enjoy land, (5) caused by another's conduct in acting or failure to act". *Copart Industries, Inc. v. Consolidated Edison Co. of New York, Inc.*, 362 N.E.2d 968, 972 (N.Y. 1977).

### i. For Use of Disputed Area

The plaintiff's claim of nuisance against the defendants based on their use of the Disputed Area from 2006 to the present is not viable. Viewing the evidence in the light most favorable to plaintiff, and assuming that the Disputed Area belongs to her, it is unlikely that a fact finder could find that defendants' behavior was unreasonable in character or intentional in origin. Defendants were acting in reliance on various public records and surveys. Def.'s Memo Ex. C, D, E. Additionally, plaintiff cannot establish that the defendants intended to interfere with her use and enjoyment of her property if they were acting to protect their own property. Summary judgment on this claim is granted to defendants.

### ii. For Violation of Zoning Ordinance

Plaintiff also has a claim for nuisance based on defendants renting out some portion of their property. She claims this is in violation of the single-family zoning of the house and causes an increase in traffic that interferes with her use and enjoyment of her own property. Pl.'s Memo 32. Plaintiff, however, has only established through the evidence that there are tenants living in defendants' home. Hanoch Dep. 138-139. There is no evidence indicating how any increased traffic substantially interfered with plaintiff's right to use and enjoyment. There is also no evidence to support a finding that defendants' rental was designed to, or did, interfere with some right of plaintiff. Defendants' motion for summary judgment on this claim is granted.

### e. Ejectment

For ejectment, a claimant must show that she has legal title to the property and was ousted or deprived of possession of the property. *McKaig v. McKaig*, 276 N.Y.S. 829, 829 (Erie County 1935). Summary judgment on this claim is not appropriate because there is still a

significant question of fact as to who owns or has rights in the Disputed Area and proof of legal
title is required for an ejectment claim.

### f. Trespass

Trespass is an "interference with a person's right to possession of real property either by
an unlawful act or a lawful act performed in an unlawful manner." *Kurzner v. Sutton Owners
Corp.*, 666 N.Y.S.2d 135, 135 (App. Div. 1997). "To be liable for a trespass, a defendant must
intend the intrusion." *Brown v. Arcady Realty Corp.*, 769 N.Y.S.2d 606, 610 (App. Div. 2003).
Summary judgment is inappropriate because there is a question whether plaintiff has the right to
possession of the Disputed Area. That defendants intended to take full control of the Disputed
Area is clear.

### g. Conversion

The elements of conversion are "'(1) the plaintiff's possessory right or interest in the
property . . . and (2) defendant[s'] dominion over the property or interference with it, in
derogation of plaintiff's rights.'" *Palermo v. Taccone*, 913 N.Y.S.2d 859, 862 (App. Div. 2010)
(quoting *Colavito v New York Organ Donor Network, Inc.*, 860 N.E.2d 713, 717 (N.Y. 2006)).
Summary judgment is inappropriate on this issue because there is a dispute about plaintiff's
possessory right in the Disputed Area.

### h. RPAPL § 861

Plaintiff claims that defendants removed the hedge in the Disputed Area in 2007 in
violation of N.Y. RPAPL § 861. This statute provides a cause of action for removing trees and
damaging lands in the course of removal. It reads:

> If any person, without the consent of the owner thereof, cuts,
> removes, injures or destroys, or causes to be cut, removed, injured
> or destroyed, any underwood, tree or timber on the land of another
> . . . or . . . land of a city, village, town or county, or damages the

> land in the course thereof, an action may be maintained against
> such person for treble the stumpage value of the tree or timber or
> two hundred fifty dollars per tree, or both and for any permanent
> and substantial damage caused to the land or the improvements
> thereon as a result of such violation.

N.Y. RPAPL § 861(1).

If defendants establish that they had reason to believe that the land affected was their

own, the treble damages awarded in § 861(1) is reduced to compensatory damages under

§ 861(2):

> if the defendant establishes by clear and convincing evidence, that
> when the defendant committed the violation, he or she had cause to
> believe the land was his or her own, or that he or she had an
> easement or right of way across such land which permitted such
> action, or he or she had a legal right to harvest such land, then he
> or she shall be liable for the stumpage value or two hundred fifty
> dollars per tree, or both and reasonable costs associated with
> maintaining an action pursuant to this section. In such case, the
> defendant shall also be liable for any permanent and substantial
> damage caused to the land or the improvements thereon as a result
> of such violation.

N.Y. RPAPL § 861(1). The damages awarded are based on "stumpage value," which is defined

as "current fair market value of a tree as it stands prior to the time of sale, cutting, or removal."

N.Y. RPAPL § 861(3).

The statute does not apply to this claim and it should therefore be dismissed. The general

purpose of the act that created this cause of action was:

> (1) to respect the existing common law right to engage in *forestry
> practices* in order to maintain such practices for the benefit of the
> state; (2) to protect the existence and operation of existing *forest
> activities*; (3) to encourage the initiation and expansion of
> additional *forestry businesses*; (4) to discourage inadvertent
> impediments to the practice of *forestry* that may result from well
> meaning but poorly constructed local ordinances concerning
> *forestry* activities; (5) to improve understanding of the economic
> and environmental contributions that well *managed forests* bring to
> the state; and (6) to deter the *unlawful taking of trees* by increasing
> criminal and civil penalties.

25

2003 N.Y. Laws 602, 602 (emphasis added). Because the act governs commercial contexts in the forestry industry, it is does not apply in the instant case to a single hedge. The forests of this area, so dense when Indians occupied it, have long since been cut down. A hedge is not a tree; a row of hedges is not a forest. This claim is dismissed.

### i. Punitive Damages

Punitive damages in tort actions are awarded only when the wrongdoing is intentional or deliberate and either "has circumstances of aggravation or outrage, has a fraudulent or evil motive, or is in such conscious disregard of the rights of another that it is deemed willful and wanton." *Prozeralik v. Capital Cities Communications, Inc.*, 626 N.E.2d 34, 41-42 (N.Y. 1993) (citation omitted). It must have "the character of outrage frequently associated with crime." *Id.*

Defendants' alleged conduct in this case does not rise to this level. They were arguably acting in good faith to protect what they believe is their property. Their belief is supported by evidence in public records and surveys. Summary judgment should be granted for the defendants on this claim.

### VIII. Conclusion

Defendants' motion for summary judgment is denied on the adverse possession claim and related claims of trespass, ejectment, and conversion. There are still questions of material fact that need to be resolved before title and easements in the Disputed Area can be determined. Summary judgment is granted for defendants on the nuisance and punitive damages claims because defendants' behavior was in reliance on public records and cannot be seen as an intentional and unreasonable interference with plaintiff's rights. Plaintiff's claim under N.Y. RPAPL § 861 is dismissed as inapt.

Based on evidence submitted on this motion and a view of the property, a jury might find the following: plaintiff's and defendants' title and easements runs to three and a half (3½) feet from defendants' house and five (5) feet from plaintiff's house in an approximately eight and a half (8½) foot wide strip of land between their two single–family, multiple story homes. Over the years, each of the parties and prior owners with whom they are in privity have arguably obtained easements or title by adverse possession over the other owner's space between the two homes based upon continuous adverse use of air, light, and access, and of aesthetic enjoyment. The fence recently installed by defendants between the parties' houses is a crude, unsightly, approximately four foot high steel barrier. It varies from the usage of all other similar properties on the block that have space between adjacent homes, partially paved or grassy, and utilized freely and jointly by occupants of both houses with no fences or other encumbrances.

Plaintiffs may move for a preliminary injunction requiring the fence recently installed by defendants to be removed forthwith, with free access restored to occupants of both homes to the entire space between the parties' houses from the sidewalk to a line running from the back of one house to the back of the other, restoring the status quo ante. The Disputed Area could then be maintained without obstruction or blockages, except for the remains of one hedge between the properties, during the litigation. The preliminary injunction sought may include restoration by defendants of the grounds between the houses to the condition prior to installation of the fence, as near as may be practicable.

From the line at the rear of the houses to the rear of each of the properties there appears to be no proof of adverse easement. *See* Diagram I and II, *supra*. In view of the change in elevation in this backyard area between the properties, the steps and fence presently in place

there may be maintained for safety reasons. The Disputed Area can be restored during the litigation with access to all parties without appreciably harming any of them.

Referred to the magistrate judge is the issue of whether a jury trial is required in view of the equitable issues now remaining.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Date:  June 24, 2011
         Brooklyn, New York